# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| ERROL STANLEY, NIGEL CHARLES, MELVIN NEAL, JOSEPH SONNY, WRANDA DAVIS, individually and as representatives of a class of persons too numerous to name individually<br><br>Plaintiffs,<br>v.<br><br>ST. CROIX BASIC SERVICES, INC., BASIC INDUSTRIES, INC., HOVENSA, LLC. And AMERADA HESS CORPORATION,<br>Defendants. | CIVIL NO. 2003/0055 |

## MEMORANDUM OPINION

FINCH, J.

THIS MATTER comes before the Court on Plaintiffs' Motion to Certify Interlocutory Appeal of Order Denying Plaintiffs' Motion to Amend Complaint, or, in the alternative, Plaintiffs' Motion for Class Certification. Defendants oppose said Motion. After careful consideration and upon review of the briefs submitted by the parties, the Court issues the following ruling.

## I. FACTUAL & PROCEDURAL BACKGROUND

On January 31, 2003, St. Croix Basic Services Inc., ("St. Croix Basic"), a Hovensa subcontractor, lost its refinery contract and ceased business at the refinery. St. Croix Basic had sixty seven (67) employees at the time. On March 31, 2003, five (5) Plaintiffs filed a class action Complaint against St. Croix Basic, its parent, Basic Industries, Inc., Hovensa, LLC and

Amerada Hess Corporation (collectively "Defendants").  Plaintiffs' Complaint included numerous counts: (1) wrongful discharge; (2) breach of a duty of good faith and fair dealing; (3) violations of the Virgin Islands Plant Closing Act and the Worker Adjustment Retraining Notification Act; (4) fraud; (5) illegal retaliation and obstruction of justice; and (6) intentional and negligent infliction of emotional distress.

On July 21, 2005, the Court, acting *sua sponte*, ordered the Plaintiffs to move to certify their class by September 30, 2005.  On September 29, 2005, the Plaintiffs' counsel announced to the Magistrate Judge and opposing counsel that Plaintiffs would not move for certification because the Third Circuit purportedly requires at least two hundred ninety (290) plaintiffs to proceed as a class action.  At a status conference held on December 19, 2005, the Court ordered Plaintiffs to move to amend their complaint by December 29, 2005.

On December 29, 2005, Plaintiffs moved for leave to amend their Complaint, abandoning the class action suit in favor of adding seventy seven (77) new Plaintiffs.  Subsequently on February 1, 2006, Plaintiffs moved to add an additional ten (10) Plaintiffs to its Amended Complaint.  In total, Plaintiff requested that there be ninety two (92) named Plaintiffs, counting the original five class action Plaintiffs.  Defendants opposed Plaintiffs' Motion to Amend.  On July 14, 2006, the Magistrate Judge entered an Order Denying Plaintiffs' Motion to Amend the Complaint.  Plaintiffs Appealed the Magistrate Judge's Order.  The Court affirmed the Magistrate's decision on March 4, 2008.

Plaintiffs now move to certify for interlocutory appeal the Court's Order denying Plaintiffs' Motion to Amend the Complaint.  In the alternative, Plaintiffs seek to certify a class under Count III consisting of all individuals formerly employed by St. Croix Basic who received wages for services performed at the Hovensa refinery site between February 1, 2002 and

February 1, 2003.

II.   CERTIFICATION FOR INTERLOCUTORY APPEAL

   A.  STANDARD OF REVIEW

Interlocutory appeals are permitted under the circumstances set out at 28 U.S.C. § 1292(b)[1]. To merit interlocutory review, the order at issue must "(1) [i]nvolve a controlling question of law, (2) offer a substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, materially advance the termination of the litigation." Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974); Hulmes v. Honda Motor Co., 936 F. Supp. 195, 208 (D.N.J. 1996); see also Milbert v. Bison Laboratories, Inc., 260 F.2d 431, 435 (3rd Cir. 1958) (holding that requirements of §1292(b) are to be strictly construed). A party's petition seeking certification of an order for interlocutory appeal must be filed with the district court within a reasonable time after the order sought to be appealed. Ahrenholz v. Board of Trustees of the University of Illinois, 219 F.3d 674 (7th Cir. 2000).

Interlocutory appeal provides a limited procedural mechanism for determining the proper governing law where there is a legitimate disagreement among courts with regard to the correct legal principle to be applied. The district court has broad discretion in determining whether to certify an order for interlocutory appeal. Electric Mobility Corp. v. Bourns, 87 F.

---

[1] 28 U.S.C. § 1292(b) states, "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." Id.

Supp. 2d 394, 398 (D.N.J. 2000); see Ferraro v. Secretary of the United States Dep't of Health and Human Serv., 780 F.Supp. 978, 979 (S.D.N.Y. 1992); 16 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure, § 3929, at 371 (1996) n. 27 (citing S. Rep. 2434, 85th Cong., 2d Sess., 1958, in 1958 U.S.C.C.A.N. 5255, 5257 ("[T]he appeal is discretionary rather than a matter of right. It is discretionary in the first instance with the district judge")). The Third Circuit has cautioned that "section 1292(b) should be sparingly applied." Milbert v. Bison Laboratories, 260 F.2d 431, 433 (3d Cir. 1958); see also Zigmuntowicz v. Hospitality Investments, Inc., 828 F. Supp. 346, 353 (E.D. Pa. 1993) (holding that certification is to be used in exceptional cases where an immediate appeal would avoid protracted and expensive litigation).

## B. DISCUSSION

### i. Controlling Question of Law

A controlling question of law is one that if erroneously decided, would result in reversible error on final appeal. Katz, 496 F2d at 755; In re Magic Marker Securities Litigation, 472 F. Supp. 436, 438 (1979). The March 4, 2008 Order at issue arose out of Plaintiffs' Motion to Amend under Federal Rule of Civil Procedure 15(a). Decisions under that rule are committed to the district court's sound discretion. Lewis v. Curtis, 671 F.2d 779, 783 (3rd Cir. 1982); see Davis, 371 U.S. at 182; see also Coventry v. U.S. Steele Corp., 856 F.2d 514 (3d Cir. 1988) (holding that decision to grant or deny leave to amend a complaint is a matter committed to sound discretion of district court).

Decisions committed entirely to the district court's discretion rarely present "a controlling issue of law" and are generally not appropriate for certification under §1292(b). See Link v.

Mercedes-Benz of North America, Inc. 550 F.2d 860, 863 (3rd Cir. 1977); see also 16 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3930 ("Ordinarily district courts should refuse to certify [matters that lie within the discretion of the court], not only because of the low probability of reversal, but also because the recognition of discretion results from a studied determination that appellate courts should not interfere"); Schine v. Schine, 367 F.2d 685, 688 (2d Cir. 1966) (holding that issue regarding whether the district judge abused his discretion in granting or denying a separate trial "may rarely, if ever, involve 'a controlling question of law'"); Atlantic City Elec. Co. v. A.B. Chance Co., 313 F.2d 431, 434 (2d Cir. 1963) (finding that questions involving the discretion of the district judge should not be reviewed by an appellate court during interlocutory appeal except where there has been a manifest abuse of discretion).

In the Order at issue, the Court based its decision to deny Plaintiffs' motion to amend on its conclusion that Plaintiffs' delay in seeking amendment was "undue" and Defendants would be "prejudiced" by the amendment. See Memorandum Opinion accompanying Order at 7 (Docket No. 152). Plaintiffs' waited almost three years before requesting the addition of eighty-seven new Plaintiffs and the Court found that granting Plaintiff's motion to amend "would place an unfair burden on Defendants by further lengthening the time and resources they must allocate to this case after they have already addressed Plaintiffs' initial complaint and discovery requests." Id. Plaintiffs maintain that it was erroneous for the Court to reach this conclusion, arguing that "the Court applied an incorrect standard of what constitutes 'prejudice.'" See Pls.' Reply to Separate Oppositions of Defendants at 6 (Docket No. 165). Plaintiffs insist that there is a "genuine dispute over whether the burden of imposing additional discovery obligations on the non-moving party" is the kind of "prejudice" that should preclude an amendment. Id.

5

The Court finds that the Order at issue does not involve a "controlling question of law." Plaintiffs simply disagree with the Court's finding of "prejudice" and are attempting to manufacture a controlling question of law by arguing that the Court misinterpreted the word "prejudice." This is nothing more than a disagreement with the Court's application of the governing standard. See P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 355, 359 (D.N.J. 2001) (holding that questions are essentially "manufactured" controlling questions when they simply represent Plaintiffs' disagreement with the outcome). Even if the relevant Order did involve a controlling question of law, the Court would still find that there is no substantial ground for dispute that warrants an immediate appeal. Id.

### ii. **Substantial Ground for Difference of Opinion**

A substantial ground for difference of opinion exists when there is a genuine doubt or conflicting precedent as to the correct legal standard. Cendant Corp., 161 F. Supp. 2d at 360. A party's simple disagreement with an adverse ruling does not create a difference of opinion. See Electric Mobility Corp. v. Bourns Sensors/Controls, Inc., 87 F. Supp. 2d 394, 398 (D.N.J. 2000); Kapossy v. McGraw-Hill, Inc., 942 F. Supp. 996, 1001 (D.N.J. 1996); Hulmes v. Honda Motor Co., Ltd., 936 F. Supp. 195, 210 (D.N.J. 1996); Max Daetwyler Corp. v Meyer, 575 F. Supp. 280, 282 (E.D. Pa.1983). A difference of opinion can only arise out of genuine doubt as to the correct legal standard and where there are conflicting decisions regarding the legal standard which necessitate the need for intervention by a higher court. See Cendant Corp., 161 F. Supp. 2d at 360, Dorward v. Consolidated Rail Corp., 505 F. Supp. 58, 59 (E.D. Pa. 1980); Mazzella v. Stineman, 472 F. Supp. 432, 435 (E.D. Pa. 1979).

Here, there exists no authority contradicting the legal standards applied by the

Magistrate Judge or this Court, nor do Plaintiffs challenge that the Magistrate and this Court misapplied well settled law in their consideration of Plaintiffs' motion. Absent such contrary authority, no grounds for certification of an interlocutory appeal are present in this case. <u>Larsen v. Senate of Com. of Pa.</u>, 965 F. Supp. 607, 609 (M.D. Pa. 1997); <u>see</u> D'<u>Ippolito v. Cities Service Co.</u>, 374 F.2d 643, 648-49 (C.A.N.Y. 1967); <u>see also</u> 3 Moore Federal Practice P15.12, at 973 (2d ed. 1966) ("Possible error in allowing or denying an amendment is not normally reviewable by mandamus or other extraordinary writ"). Accordingly, certification for interlocutory appeal is improper because there is no difference of opinion as to the legal standard to be applied in considering motions to amend and which the Magistrate and this Court applied to Plaintiff's motion.

### C. CONCLUSION

The Court finds that the Order in question does not involve a controlling question of law, nor does it offer a substantial ground for difference of opinion as to the correct legal standard applied therein. Because immediate appeal is improper for these reasons, the Court need not address the third prerequisite to interlocutory review; whether it will materially advance the termination of the litigation. See <u>Katz</u>, 496 F.2d at 754; <u>Hulmes</u>, 936 F. Supp. at 208. For the reasons stated above, the Court concludes that the requirements for interlocutory appeal set forth in 28 U.S.C. § 1292(b) are not satisfied in this case. Therefore, interlocutory review is **DENIED**.

## III. CLASS CERTIFICATION OF COUNT III CLAIMS

Plaintiffs wish to bring forth their numerous claims regarding wrongful discharge, emotional distress, and fraud separately from their claims under Count III, such that a class would exist for the sole purpose of one count out of seven total claims. Fed. R. Civ. P. 23(c)(4) provides that, "when appropriate an action may be brought or maintained as a class action with respect to particular issues." Count III of Plaintiffs' Complaint alleges claims pursuant to the Virgin Islands Plant Closing Act (24 V.I.C. §§471—478) and the federal Worker Adjustment Restraining Notification ("WARN") Act (29 U.S.C. §§ 2101—2109). The Virgin Islands statute requires employers to provide at least ninety days' advance written notice prior to certain "plant closings" (24 V.I.C. § 472) and to pay each "affected employee a severance payment equal to one week's pay for every year of service with the employer." 24 V.I.C. § 473.

The federal WARN Act is similar to the Virgin Islands statute in that it requires employers to provide advance written notice to those employees who will be subject to a "mass layoff" sixty days before the layoff occurs. 29 U.S.C. § 2102(a). A "mass layoff" is "a reduction in force which… results in an employment loss at the single site of employment…for …at least 50 employees." 29 U.S.C. § 2104(a). WARN entitles affected employees who are not provided with advance notification of an impending "mass layoff" to damages from their former employer in an amount equal to back pay for each day of the violation, up to sixty days. Id.; see Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139, 142 (3d Cir. 1998).

### A. STANDARD OF REVIEW

The Court may certify a class action only if it is satisfied "after rigorous analysis" that the requirements of Federal Rule of Civil Procedure 23 have been met. Gen. Tel. Co. of the

Southwest v. Falcon, 457 U.S. 147, 161 (1982); see Stewart v. Abraham, 275 F.3d 220, 227 (3d Cir. 2001); Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994); Fed. R. Civ. P. 23. In determining whether certification is appropriate, the Court looks at the individualized circumstances of the case and balances "between the convenience of maintaining a class action and the need to guarantee adequate representation to the class members." Wright v. Stone Container Corp., 524 F.2d 1058, 1061 (8th Cir. 1975).

To obtain class certification, Plaintiffs must first show that the purported class meets the four prerequisites of Rule 23(a), which states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to satisfying each of the requirements of Rule 23(a), a plaintiff seeking class action status must also show that the proposed class qualifies under at least one of the subsections of Rule 23(b). See Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006). Unless the prerequisites of Rule 23(a) are established, the more specific requirements of Rule 23(b) need not be addressed. See Fed. R. Civ. P. 23(b). Failure to meet any of Rule 23(a) or 23(b)'s requirements precludes certification. In re Life USA Holding Inc., 242 F.3d 136, 147 (3d Cir. 2001).

Here Plaintiffs seek class certification under Rule 23(b)(3). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: (1) common questions must 'predominate over any questions affecting only individual members'; and (2) class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997);

9

Fed. R. Civ. P. 23(b)(3). In making the specific findings under Rule 23(b)(3), the Court should consider the following factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class[2]; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

## B. DISCUSSION

### i. Numerosity

Numerosity requires that "the class be so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met. Abraham, 275 F.3d at 227; see 5 James Wm. Moore et al., Moore's Federal Practice S 23.22[3][a] (Matthew Bender 3d ed. 1999); see also WARN Act § 2101 (by its terms, WARN applies only to those employer actions which affect large quantities of employees).

Prior to ceasing operations on January 31, 2003, St. Croix Basic employed sixty-seven individuals at the refinery, who are potential class members in this case. Accordingly, the Court finds that the first prong of Rule 23(a) is met.

---

[2] The Court notes that a class action complaint for damages for violation of the Virgin Islands Plant Closing Act was filed against St. Croix Basic Services in the Superior Court of the Virgin Islands on January 28, 2005. See Randy Baptiste, et al v. St. Croix Basic Services, Civil No. SX-05-CV-42. The proposed class in that case consists of all individuals who were employed by St. Croix Basic Services at its facility and who, at the point of termination, received wages for one consecutive year, who otherwise were eligible for unemployment benefits and who were members of the United Steelworkers of America Local Union.

### ii. **Commonality**

The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. Mueller v. CBS, Inc., 200 F.R.D. 227, 235 (W.D. Pa. 2001); see Abraham, 275 F.3d at 227; Baby Neal, 43 F.3d at 56; see also Gen. Tel. Co. of the Southwest, 457 U.S. at 155 (finding that purpose of Rule 23 is to promote judicial economy by allowing litigation of at least one issue that affects every class member). This requirement is usually easily met because it is not necessary that every question of law or fact be common to each member of the class. Baby Neal, 43 F.3d at 56. Commonality is satisfied when a single issue pervades the class members' claims "even though the individuals are not identically situated." Paxton v. Union Nat'l Bank, 688 F.2d 552, 561 (8th Cir. 1982). However, not every common question will suffice since "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998). There must be a common issue that advances the litigation of all class members' claims. Id.

Here, the named Plaintiffs and the putative class are united by the common legal question of whether Defendants complied with the statutory notice requirements of the WARN Act and the Virgin Islands Plant Closing Act. To so determine, common factual issues must be addressed. Under the WARN Act, liability will turn, in part, on whether each Defendant is an "employer" as that term is used in the statute, whether there was a "plant closing" or "mass layoff," and, if so, whether any required notice was given properly to affected employees. See §§ 2101(a)(1), 2101(a)(2), 2102; Gomez v. Am. Garment Finishers Corp., 200 F.R.D. 579, 582 (W.D. Tex. 2000). Under the Virgin Islands Plant Closing Act, liability will be dependent, in part, on whether Defendants' closing of its facility is considered a "plant closing" under Virgin

Islands law, on whether advance written notice was given to class members, and on whether any severance payments were made. See 24 V.I.C. §§ 472, 473. Accordingly, the Court finds that there are common questions of both law and fact pertinent to the class. Therefore, this requirement is met.

### iii. Typicality

The typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members. Abraham, 275 F.3d at 227. "It requires a determination of whether, given the fact that the representative raises some question of law or fact that is common to the class, the remaining issues and possible defenses are also typical." Quigley v. Braniff Airways, Inc., 85 F.R.D. 74, 79 (N.D. Tex. 1979); see 5 James Wm. Moore et al., Moore's Federal Practice § 23.24[1]; see also Newton v. Merrill Lynch, Pearce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d. Cir. 2001) ("The typicality inquiry . . . centers on whether the named plaintiffs' individual circumstances are markedly different"). It is well-settled that the class representatives must possess the same interest and suffer the same injury as the class members, giving rise to the same legal or remedial theory. See East Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977). Plaintiffs must show that the pursuit of their claims will advance the interest of class members and that their claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. See Fox v. United States Dep't of Housing & Urban Development, 468 F. Supp. 907 (E.D. Pa. 1979).

Although the representative Plaintiffs allege two legal theories based on the WARN Act and the Virgin Islands Plant Closing Act, liability for the benefit of the representatives, once

12

established, will not necessarily establish liability for the benefit of the class also. The named Plaintiffs worked in non-union supervisory positions while many of the proposed class members worked in non-supervisory union positions.[3] "There is, in fact, a very distinct difference in the terms and conditions of employment between bargaining unit members and other employees." Willie L. Buckner v. Cameron Iron Works, Inc., 1978 WL 40 at *2 (S.D. Tex. Jan. 3, 1978) (refusing to grant class certification where Plaintiffs were hourly, non-supervisory personnel and members of the proposed class held positions outside the bargaining unit). An individualized inquiry will be necessary to determine whether proposed class members qualify as "employees" for purposes of the Virgin Islands Plant Closing Act and WARN Act. See Eisman v. Pan American World Airlines, 336 F. Supp. 543, 547 (E.D. Pa. 1971).

The plant closing in this case impacted individual Plaintiffs differently and the analysis of non-union supervisory employees' claims will not answer issues relating to non-supervisory union employees' claims. By proving their own claims, the representative Plaintiffs will not necessarily prove the claims of the proposed class. In addition, the need to prove individual damages would make proceedings as a class impracticable.[4] See Georgine v. Amchem Products, Inc., 83 F.3d 610, 632 (3d Cir. 1996); see also Klay v. Humana, Inc., 382 F.3d 1241, 1260 (11th Cir. 2004) (holding that need for individualized assessments of damages may warrant denial of certification where liability raised individualized questions); Reap v. Continental Cas. Co., 199 F.R.D. 536, 549 (D.N.J. 2001) (denying class certification because, among other things, calculating damages would be an individualized task).

---

[3] Many members of the proposed class were part of the union bargaining unit, whose wages, promotions, job descriptions and seniority were governed by union contracts.

[4] Under the WARN Act and the Virgin Islands Plant Closing Act, assuming Plaintiffs prove liability, the plaintiff class will have very specific monetary damages available. See § 2104 (setting forth specific method of calculating back pay and benefits; limitations on back-pay; attorneys fees and various set-offs).

Plaintiffs' claims, as alleged in their complaint, reflect diverse interests within the proposed class of employees. The Court finds that the maintenance of a class action will not advance "the efficiency and economy of litigation which is a principal purpose of the procedure." Gen. Tel. Co. of the Southwest, 457 U.S. at 159 (citation omitted). The multitude of individualized issues presented in Plaintiffs' claims would necessitate complicated mini-litigations within the class action itself. See Danvers Motor Co., Inc. v. Ford Motor Co., 2008 WL 4181728 at *8 (3d Cir. Sept. 12, 2008). Therefore, the Court finds that Plaintiffs have failed to satisfy the typicality requirement.

### iv.     **Adequacy of Representation**

The final requirement under Rule 23(a) has "two components designed to ensure that the absentees' interests are fully pursued." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 630 (3d Cir. 1996). "First, the interests of the named plaintiffs must be sufficiently aligned with those of the absentees" that it is unlikely that conflicts of interest will arise. Id.; see Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); Hoffman Elec. Inc. v. Emerson Elec. Co., 754 F. Supp. 1070, 1076 (W.D. Pa. 1991). Second, class counsel must be qualified and serve the interests of the entire class. Georgine, 83 F.3d at 630; see Mueller, 200 F.R.D. at 238.

With respect to counsel for named Plaintiffs, the Court notes that attorney Lee J. Rohn is diligent and experienced in employment litigation. The technical competence of counsel is not questioned. Attorney Rohn has practiced employment litigation for many years and has extensive experience handling class-action litigation. Therefore, the Court finds that Plaintiff's counsel is sufficiently qualified, experienced, and generally able to conduct the proposed litigation. However, "lack of congruence among the interests of the class representatives and the

class members may render the attorney, despite his [or her] diligence, unable to counsel the class members and the plaintiffs fully and fairly." Vuyanich v. Republic National Bank of Dallas, 82 F.R.D. 420, 434 (N.D. Tex. 1979). The traditional approach in judging the adequacy of the representative, as opposed to his or her attorney, has been to consider:

> (1) whether the interest of the named party is coextensive with the interests of the other members of the class; (2) whether his interests are antagonistic in any way to the interests of those whom he represents; (3) the proportion of those made parties as compared with the total membership of the class; (4) any other facts bearing on the ability of the named party to speak for the rest of the class.

3B Moore's Federal Practice Manual P 23.07(1), at 23-203 (2d ed. 1980); see also In Re South Central States Bakery Products, 86 F.R.D. 407, 417 (M.D. La. 1980) ("The test of adequate representation is whether the representative has a sufficient interest in, and nexus with, the class to insure vigorous prosecution of the action"). The Court is not satisfied that Plaintiffs have met their burden to show that there is no conflict between the representative plaintiffs and any class member.

As explained in the previous section, Plaintiffs seek to represent a class that includes both bargaining unit personnel and non-bargaining unit members. Each one of the named Plaintiffs were supervisory personnel while much of the proposed class that Plaintiffs wish to represent were non-supervisory personnel and members of the union. The Fifth Circuit has recognized that supervisory personnel could not represent bargaining unit members in a class action because there was no "nexus" between the two groups. Wells v. Ramsey, Scarlett and Company, Inc., 506 F.2d 436, 437 (5th Cir. 1975). In Wells, a black non-union supervisor sought to represent black union employees of the defendant company on a claim of racial

15

discrimination in employment opportunities.[5] Id. The court stated:

> "We conclude after studying the record that there was no nexus between plaintiff, a foreman, and the longshoremen named in the class. Plaintiff does not seek to represent a class consisting of black foremen. He was a salaried employee, employed on a monthly basis, who supervised longshoremen. The longshoremen in the asserted class were members of Local 1830, one of the defendant unions. They were assigned on a daily basis through the unions, under collective bargaining agreements, to stevedoring companies for the available longshoremen jobs on the docks in the Baton Rouge area. Plaintiff was not in the longshoremen group for job assignment purposes; indeed, while at one time a member of Local Union 1830, he had severed his affiliation with the union long before his complaint was filed. . . . We conclude that the nexus between plaintiff and the class was insufficient and thus the district court did not err in declining to allow the cause to proceed as a class action. . . . One may not represent a class of which he is not a part."

Id. at 437-38; see also Gilchrist v. Bolger, 89 F.R.D. 402, 407 (S.D. Ga. 1981) (holding that named plaintiffs, who were non-supervisory employees, did not have sufficiently similar interests with supervisory employees such that any certifiable class with plaintiffs as named representatives would necessarily exclude supervisory personnel); Markey v. Tenneco Oil Co., 439 F. Supp. 219, 229 (E.D. La. 1977) (finding that plaintiff, a union employee, could not properly represent non-union employees in class action because there was no nexus between plaintiff and non-union employees he sought to represent); McClinton v. Turbine Support, Division of Chromalloy American Corp., 68 F.R.D. 236 (W.D. Tex. 1975) (holding that plaintiff, a black employee who was not a member of the union, could not represent black union members in employment discrimination suit).

The same reasoning applied by the court in Wells operates in this case to bar the representation of bargaining unit employees by non-bargaining unit members. Plaintiffs may not

---

[5] The black supervisor in Wells was denied representative status where the class whose interests he sought to support was made up of the longshoremen whom he oversaw. Though the would-be class members were also black, the Wells court found that "nexus" was lacking. The court defined "nexus" to mean "a tying or binding together, a fastening, joining, an interlacing, entwining, clasping." Wells, 506 F.2d at 437, n. 3; see Jamerson v. Board of Trustees, 80 F.R.D. 744, 748 (N.D. Ala. 1978).

represent a group to which they do not belong.  Ritacco v. Norwin School Dist., 361 F. Supp 930 (W.D. Pa. 1973); see Hall v. Beals, 396 U.S. 45, 49 (1969); Bailey v. Patterson, 369 U.S. 31, 33 (1962); Wells, 506 F.2d at 438; Weiner v. Bank of King of Prussia, 358 F. Supp 684 (E.D. Pa. 1973); see also Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208 (1974) (holding that plaintiff must possess same interest and suffer same injury shared by all members of class he represents to have standing to sue as class representative).  The diversity and conflict within the proposed class defeat the requirements for class certification.  See Danvers Motor Co., Inc., 2008 WL 4181728 at *6.  Accordingly, the Court finds that Plaintiffs are not qualified to fairly and adequately represent the proposed class because of the differences between named Plaintiffs and the proposed class.

## C. CONCLUSION

The wide range of interests among members of the proposed class precludes a finding of typicality or adequacy of representation in this case.  See Danvers Motor Co., Inc., 2008 WL 4181728 at *8. Having determined that the typicality and adequacy requirements are lacking, the Court need not address the remaining requirements of Rule 23, as failure to meet any one of them precludes class certification.[6]  In re Life USA Holding Inc., 242 F.3d at 147.  The Court finds that it would neither be more fair nor more efficient to proceed with this matter as a class action.  For the reasons stated above, the Court concludes that the prerequisites of class certification set forth in Rule 23 are not satisfied in this case.  Therefore, class certification is **DENIED**.

---

[6] Nevertheless, the diversity of interests and issues that defeat the typicality and adequacy of representation requirements compel the conclusion that the superiority and predominance requirements of Rule 23(b)(3) are likewise not met.  See Danvers Motor Co., Inc., 2008 WL 4181728 at *8.

**ENTERED this 31st day of October, 2008.**

                                                                     /s/
                                         **HONORABLE RAYMOND L. FINCH**
                                         **U.S. DISTRICT JUDGE**